EILEEN M. DECKER
United States Attorney
PATRICIA A. DONAHUE
Assistant United States Attorney
Chief, National Security Division
ANTHONY J. LEWIS (Cal. Bar No. 231825)
Assistant United States Attorney
Deputy Chief, Terrorism and Export Crimes Section
VICKI CHOU (Cal. Bar No. 248598)
Assistant United States Attorney
Cyber Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:    (213) 894-1786/8692
    Facsimile:    (213) 894-7631
    E-mail:  anthony.lewis@usdoj.gov
            vicki.chou@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 14-173-CAS |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SET ASIDE VERDICT, OR, IN THE ALTERNATIVE, FOR A NEW TRIAL |
| v. | |
| KEITH PRESTON GARTENLAUB, | |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby files its Opposition to Defendant's Motion To Set Aside Verdict, Or, In The Alternative, For A New Trial (Doc. 172).

//

1       This Opposition is based upon the attached memorandum of points

2   and authorities, the files and records in this case, and such further

3   evidence and argument as the Court may permit.

4   Dated: December 28, 2015          Respectfully submitted,

5                                     EILEEN M. DECKER
                                      United States Attorney
6
                                      PATRICIA A. DONAHUE
7                                     Assistant United States Attorney
                                      Chief, National Security Division
8

9                                     _____/s/_____
                                      VICKI CHOU
10                                    Assistant United States Attorney

11                                    Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                                      PAGE

TABLE OF AUTHORITIES............................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION...............................................................1

II.   STATEMENT OF FACTS.......................................................2

III.  ARGUMENT.....................................................................5

      A.    Legal Standard..........................................................5

      B.    Viewing the Evidence in the Light Most Favorable to
            the Prosecution, A Rational Trier of Fact Could Have
            Convicted Defendant of Both Counts.......................7

      C.    The Court Previously Appropriately Rejected
            Defendant's Claim That The Jury Should Have Been
            Instructed Regarding the Buffalo Logs...................12

IV.   CONCLUSION..................................................................15

**TABLE OF AUTHORITIES**

DESCRIPTION                                                          PAGE

**FEDERAL CASES**

Jackson v. Virginia,
    443 U.S. 307 (1979)..........................................5, 6

McDaniel v. Brown,
    130 S. Ct. 665 (2010)...........................................6

United States v. Alvarez-Valenzuela,
    231 F.3d 1198 (9th Cir. 2000)...................................6

United States v. Ferguson,
    246 F.3d 129 (2d Cir. 2001)....................................7

United States v. Kenny,
    645 F.2d 1323 (9th Cir. 1981)...................................7

United States v. Kuchinski,
    469 F.3d 853 (9th Cir. 2006)...................................14

United States v. Lennick,
    18 F.3d 814 (9th Cir. 1994)....................................6

United States v. Magallon-Jimenez,
    219 F.3d 1109 (9th Cir. 2000)...................................6

United States v. Nevils,
    598 F.3d 1158 (9th Cir. 2010) (en banc)......................5, 6

United States v. Pimentel,
    654 F.2d 538 (9th Cir. 1981)...................................7

United States v. Rodriguez-De Jesus,
    202 F.3d 482 (1st Cir. 2000)...................................7

United States v. Zuno-Arce,
    44 F.3d 1420 (9th Cir. 1995)...................................7

ii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendant, Keith Preston Gartenlaub ("defendant") was convicted of two child pornography offenses after a three-day jury trial, during which the government presented over 80 exhibits and almost a day's worth of forensic expert testimony.  The government presented evidence that defendant was the person who first downloaded, then repeatedly backed up, re-organized, and copied over a file structure containing personal files and a pornography collection with child pornography.  The jury returned a verdict finding defendant guilty of (1) receipt and attempted receipt of child pornography between 2001 and 2005, as charged in Count One, as well as (2) possession of child pornography on August 27, 2014, as charged in Count Two.  The jury also returned findings on the Special Verdict form (CR 167) that defendant received or attempted to receive at least one file of child pornography after April 30, 2003, and possessed at least one visual depiction of child pornography involving a prepubescent minor.

Defendant has now filed a motion to set aside the jury's verdict and enter a judgment of acquittal, or for a new trial.  Defendant argues that the evidence was insufficient to sustain either charge because (1) the government presented insufficient evidence regarding an "unknown source" computer that originally downloaded the child pornography; and (2) the Buffalo hard drive which had three copies of the child pornography archive was, according to the defendant, "proven to have been non-operational."

The Court should deny defendant's motion.  Viewing the evidence in the light most favorable to the prosecution, the government presented ample evidence from which the jury could conclude that

1  defendant was the person who not only retained, duplicated, and

2  organized the approximately 100 videos of child pornography found on

3  defendant's multiple hard drives when the government executed a

4  search at his residence and storage facility in August 2014, but also

5  the person who downloaded them in the first instance, more than a

6  decade prior.

7  **II.   STATEMENT OF FACTS**

8         The government introduced evidence that each of the hard drives

9  that contained child pornography was seized from defendant's

10  residence or his storage units.  (Testimony of SA Martinez, SA

11  Richau, SA Wheeler).  Those storage units were further connected to

12  the defendant by paperwork from the storage companies, documents

13  found at his residence, and screenshots from his employer, Boeing,

14  showing he accessed the website for the storage facility.  (Exs. 32,

15  33, 47;[1] Testimony of Sema, Pixley).  Through Bruce Pixley

16  ("Pixley"), the forensic expert, the government then presented what

17  was on the hard drives - namely, on four different hard drives, with

18  the Buffalo external drive comprising only one of those four, there

19  were seven copies of a folder structure called "OrigData" which

20  contained defendant's personal files and his pornography collection,

21

22

23         [1]    Exhibit 47 showed that defendant navigated on the Internet
   to his personal e-mail account and viewed e-mails about one of the
24  storage units, and then navigated to the storage company's website
   and created an account for the specific storage unit.  The government
25  has cited herein multiple trial exhibits, which are described in the
   exhibit list filed at docket number 171, and the government will make
26  available upon the Court's request any of those trial exhibits.  The
   government relies on all of the trial exhibits in opposing
27  defendant's motion, as well as on all of the trial testimony,
   proffers of which are set forth herein (no transcripts have been
28  prepared as of this time).

1    with nearly 100 child pornography videos in each version of the

2    collection.  (Ex. 55.)

3         Pixley's analysis also determined that, beyond the seven copies

4    still on the hard drives by the time of the government's search in

5    August 2014, forensic artifacts demonstrated that there were at least

6    two more "unknown source" copies that were the versions of "OrigData"

7    that were copied or backed-up to make the versions defendant

8    possessed in August 2014.  (Ex. 55.)  Despite not having access to

9    the original source, Pixley testified that the files retained

10   information about when they were downloaded, which was the last

11   written date associated with the files.

12        Through Pixley, the government also presented a detailed

13   analysis of the contents of the "OrigData" collection.  Logs of the

14   files from the backup copies on the Buffalo hard drive showed that

15   the collection was primarily pornography, organized in folders by

16   content, such that all the child pornography was collected in a

17   handful of folders, including child pornography files with non-

18   descriptive names that were contained in Exhibit 11.  (Exhibits 68,

19   71, 74 (log files of "OrigiData")).  This collection also included

20   personal documents with defendant's identifying information, such as

21   name and social security number, in them (Exs. 48-54), as well as

22   naked photographs of himself, which he e-mailed to himself.  (Exs.

23   38, 39, 40).  "OrigData" also held, organized in a "Partials" folder,

24   files which Pixley testified were used by a peer to peer file sharing

25   program to download files, which the user had begun downloading after

26   seeing only the name of the file.  Each of the partial files

27   introduced at trial (Exs. 77-81) was created in 2004 and had a

28   filename with terms indicative of child pornography - in a few, the

3

1    terms "child porn" were part of the file name (Exs. 77, 78).  Also,

2    between the 2005 and 2006 versions of "OrigData" (compare Exs. 68 and

3    71), defendant vastly expanded his pornography collection (though no

4    new child pornography was added), adding over a thousand files, and

5    also added at least one personal file, an email arranging a meet up.

6    (Ex. 42).  This file structure, with the pornography collection,

7    child pornography, and personal documents was also found on

8    defendant's other hard drives in his Dell and Acer computers (See Ex.

9    55, p. 6).

10        At the same time that the user of the computer backed up the

11   "OrigData" folder structure, he also backed up a "Favourites" folder

12   (Exs. 69, 72), with bookmarked websites, and a "Data" folder (Exs.

13   70, 73).  In the Data folder were personal documents such as

14   defendant's email archive (Ex. 60) as well as personal photographs

15   (Ex. 41) that were taken with the same camera as the naked pictures).

16        The government also introduced information about contemporary

17   access of the "OrigData" folder structure.  Pixley explained that he

18   was unable to find information regarding access of specific child

19   pornography videos; he tested the Windows configuration on the Dell

20   computer by playing videos and found that the system was configured

21   not to maintain information about recently played videos.  Windows,

22   however, maintained information regarding folders that had been

23   opened, and Pixley testified that folders containing child

24   pornography had been opened in 2012 and 2013, including one folder

25   that was accessed on October 18, 2013, just prior to the "Keith"

26

27

28

password protected user on the Acer copying "OrigData" over to the computer.[2]

## III. ARGUMENT

### A.   Legal Standard

Under Rule 29 of the Federal Rules of Criminal Procedure, the Court shall order the entry of judgment of acquittal on one or more offenses charged in the indictment if the evidence is insufficient to sustain a conviction.  Fed. R. Crim. P. 29(a).  Defendant raises only evidentiary challenges to the convictions.  The standard for evaluating a sufficiency of the evidence claim under Jackson v. Virginia, 443 U.S. 307, 319 (1979) is highly deferential to the jury's verdict.  As explained by the Ninth Circuit in United States v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc), Jackson "establishes a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence."  See United States

---

[2]   Defendant claims in a footnote that the government's discussion of the password protected "Keith" user's access to specific "OrigData" subfolders was "misleading" because it was a different version of "OrigData" that was copied an hour after the "Keith" user viewed the explicit filenames in the "anp" folder.  This argument is a red herring.  (Mot. at 9 n.5).  First, Pixley's testimony established that "OrigData" was largely the same between copies, with some minor differences, such that the contents of the "anp" folder were substantively identical between drive "E" and drive "F."  See, e.g., Ex. 85 (child pornography listings between "E" and "F").  Therefore it would not have mattered which "anp" folder defendant viewed before making another copy of "OrigData," and the overwhelming evidence showed that defendant was the person who knew the contents of all of the versions of "OrigData."  Second, and relatedly, the significance of the fact that the "anp" folder was opened and the names of the files displayed in Exhibit 84 were displayed goes to show that the password-protected "Keith" user was the person who viewed the contents and thus knew what was stored there before making another copy of "OrigData," regardless of which version of "OrigData" he was copying.  Furthermore, the "F" drive was copied over just a month after the "E" drive was copied over.  (Ex. 55.)  Finally, the prosecutor's rebuttal argument specifically pointed the jury to their own recollection of Pixley's testimony, not what either counsel argued.

v. Magallon-Jimenez, 219 F.3d 1109, 1112 (9th Cir. 2000); United States v. Lennick, 18 F.3d 814, 818 (9th Cir. 1994).

"First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution," which means that a court may "not usurp the role of the finder of fact by considering how it would have resolved the conflicts, made the inferences, or considered the evidence at trial." Nevils, 598 F.3d at 1164 (citing Jackson, 443 U.S. at 318-319). Rather when "'faced with a record of historical facts that supports conflicting inferences' a reviewing court 'must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Id. (quoting Jackson, 443 U.S. at 326, and citing McDaniel v. Brown, 130 S. Ct. 665, 673-74 (2010)); United States v. Alvarez-Valenzuela, 231 F.3d 1198, 1201 (9th Cir. 2000).

"Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow 'any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson, 443 U.S. at 319 (emphasis in original)). "At this second step . . . a reviewing court may not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt,' only whether 'any' rational trier of fact could have made that finding." Id. (quoting Jackson, 443 U.S. at 318-319).

Federal Rule of Criminal Procedure 33 authorizes the Court, upon a defendant's motion, to "grant a new trial . . . if the interests of justice so require." Fed. R. Crim. P. 33. The defendant bears the

burden of establishing his entitlement to a new trial.  See United States v. Kenny, 645 F.2d 1323, 1343 (9th Cir. 1981).  "A motion for a new trial is directed to the discretion of the district court." United States v. Pimentel, 654 F.2d 538, 545 (9th Cir. 1981); see also United States v. Rodriguez-De Jesus, 202 F.3d 482, 486 (1st Cir. 2000) ("The remedy of a new trial is rarely used; it is warranted only where there would be a miscarriage of justice or where the evidence preponderates heavily against the verdict."); United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) (holding that a district court "must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances'").

A motion for new trial "should be granted 'only in exceptional cases in which the evidence preponderates heavily against the verdict.'"  Pimentel, 654 F.2d at 545 (citation omitted).  When considering a new trial motion based on a claim that the verdict was against the weight of the evidence, courts must respect jury's credibility determinations and inferences.  See, e.g., United States v. Zuno-Arce, 44 F.3d 1420, 1422 (9th Cir. 1995) (verdict not against the weight of the evidence because district court properly left credibility questions regarding conflicting testimony to the jury).

**B.   Viewing the Evidence in the Light Most Favorable to the Prosecution, A Rational Trier of Fact Could Have Convicted Defendant of Both Counts**

Defendant's challenge to the convictions ignores the legal standard at this stage of the proceedings: even if there were some minor deficiency in some area of the government's case, the Court must deny the motion as long as any rational trier of fact could have found for the prosecution.

1    With regard to Count One, the government need only establish

2  that a rational trier of fact could have found <u>either</u> receipt or

3  attempted receipt of child pornography.[3]   There was nonetheless far

4  more than sufficient evidence for a rational trier of fact to find

5  both.   A rational trier of fact could have rightly determined that

6  the same person who organized and copied multiple versions of

7  "OrigData" also downloaded the files making up "OrigData" in the

8  first instance.   Given the large amount of evidence connecting

9  defendant to "OrigData" – the naked photographs, the personal

10  documents with sensitive information such as his social security

11  information, the communication with his own e-mail address – there

12  was sufficient evidence for the jury to conclude that he was also the

13  individual who downloaded the files in the first instance.

14    The same is true with regard to the partial files supporting

15  attempted receipt:   these partial files were moved into the same

16  "OrigData" folder structure as the pornography collection and the

17  personal documents, so there was sufficient evidence for a rational

18  trier of fact to conclude that defendant was also the person who

19  started those downloads.   The partial files themselves satisfy the

20  elements of attempt:   the words in the name of the file show all that

21  defendant saw before choosing to download the file, <u>i.e.</u>, what

22  defendant intended to receive, and the fact that the partial info

23  file was generated meant that he had in fact chosen to download it

24  and the downloading process had begun, <u>i.e.</u>, that defendant had taken

25  a substantial step.   In other words, it is a natural and rational

26

27    [3] Defendant raised limited challenges to the jury instructions during trial.   For purposes of this motion, the government relies on the elements of the offenses as the jury was instructed, as reflected in the record.

28

8

conclusion that the same person who was storing, copying, and re-organizing the contents of "OrigData" was the same person who populated it in the first place by downloading and saving the child pornography videos there.  The partial info files thus support the jury's verdict of guilty on both the receipt and the attempted receipt charges.

Furthermore, as the testimony of Pixley illustrated and the trial exhibits showed, the child pornography videos were downloaded on multiple different days through 2002 and 2003.  (Ex. 85).  He also testified that the partial files were last written in 2004. Furthermore the logs of the back-ups to the Buffalo hard drive that occurred in March of 2005 and March of 2006 showed changes to the version of "OrigData" that was backed up, including child pornography videos moving locations (into folders that corresponded to their name or contents, such as a movie from the "Vicky" series moving from "LStemp" sub-folder to the "vi" sub-folder), being re-named, and an entirely new folder being created where some child pornography videos were then stored.  (Exs. 68, 71).  Pixley also testified that it would take a long period of time to download movies using peer-to-peer software in 2002 and 2003, specifically up to a couple of days for a full-length movie.  Some of defendant's child pornography videos were a half hour in length.  Where the defense at trial was essentially that someone else managed to use defendant's computer, these facts refute that defense because they show continued access and use of the computer and the "OrigData" folder, which were naturally done by the person who stored his own personal documents there as well.

1    Although defendant tries to create confusion by noting that

2  Pixley testified that the "Morpheus" program was not the one used to

3  download the partial info files, even though the "Morpheus" program

4  was found on one of defendant's computers.  (Mot. at 7).  All this

5  shows is that defendant appears to have used more than one peer-to-

6  peer file-sharing software over time to create his collection that he

7  stored in "OrigData."

8    Defendant's use of the term "Unknown Source" is simply an

9  attempt to misconstrue the nomenclature used at trial.  (Ex. 55).

10  The "unknown sources" were hard drives that stored two prior,

11  different versions of "OrigData" that were eventually copied over to

12  other hard drives, including the hard drives in defendant's computers

13  seized in August 2014.  They were referred to as two "unknown

14  sources" because the government did not have in evidence the hard

15  drives, but Pixley was able to tell they existed based on the

16  footprints left behind on the versions of "OrigData" that were copied

17  and in evidence.  The fact that the hard drives found in August 2014

18  were not the original devices[4] used to download the child pornography

19  is consistent with the government's proof and theory, which is that

20  the copies that were found on the devices in evidence were copies

21  later made by the defendant after he had downloaded them.

22  Furthermore, these additional versions of "OrigData" show that

23  defendant in fact had possessed additional copies of the "OrigData"

24  folder in the past, meaning he has possessed even more copies than

25

---

26        [4]    It is possible that one or more of the hard drives, for
    example in the Dell computer, were used to download the child
27  pornography in 2002 and 2003, but if they were, as explained by
    Pixley it occurred before the hard drives were each reformatted and
28  "wiped."

1   the nearly 700 copies of child pornography videos found on his hard

2   drives in August 2014 (seven copies of "OrigData" x nearly one

3   hundred child pornography videos on each).

4        With regard to Count Two, defendant's argument seems to rest on

5   the contention that the government "presented no direct evidence that

6   anyone viewed the child pornography found on the computers."  Count

7   Two charges knowing possession, not viewing of child pornography.

8   Resolving all conflicts in favor of the prosecution – thus assuming

9   that the jury rejected the contention that alternate people with

10  random access to defendant's computer could have downloaded,

11  organized, or copied over the child pornography – there was

12  sufficient evidence to support the jury's verdict.  The jury could

13  have inferred that, after downloading and organizing the child

14  pornography videos, defendant then knowingly copied the entire folder

15  structure over in 2005, 2006, and 2013, maintaining his knowing

16  possession of the materials in August 2014.  Specific information

17  that defendant accessed some of the folders of child pornography in

18  2012 and 2013 further supported an inference that he knowingly

19  possessed the child pornography at that time, but even without that

20  evidence, there was sufficient basis for the jury to find in favor of

21  the government.

22       Specifically, Pixley was also able to determine what would have

23  been displayed when these two folders were opened by the "keith" user

24  because he examined a forensic artifact in the operating system that

25  tracks how a user prefers to view a particular window or folder.

26  That folder was displayed as shown in the first page of Exhibit 84,

27  which is powerful evidence that defendant--i.e., the user of the

28  password-protected "Keith" user on defendant's Dell computer--was the

11

1   person who knew the contents of "OrigData," and knowingly possessed

2   them in 2014.  That evidence further supports the jury's guilty

3   verdict on Count One by showing that he was in fact the person who

4   was and has been familiar with the contents of "OrigData" because he

5   was the person who created it and originally received the child

6   pornography videos he stored there.

7        While defendant's motion notes only that "someone accessed a

8   folder named 'anp'" (Mot. at 9), this evidence clearly shows that it

9   was the defendant who did so by using the password-protected "Keith"

10  user on his Dell computer to do so.  Defendant also claims that the

11  evidence showing that "anp" was opened on October 18, 2003 was

12  rebutted by the fact that other people had access to defendant's

13  apartment, but that argument is flawed in two respects.  (Mot. at 9).

14  First, the date on which Pixley testified "anp" was opened was

15  October 18, 2013, not 2003.  While the year may be only a

16  typographical error, it is significant in that it occurred a decade

17  after the child pornography videos were downloaded, the same day that

18  a copy of "OrigData" was made, and long after other people were

19  allegedly coming and going from defendant's previous residence.

20       C.   **The Court Previously Appropriately Rejected Defendant's**
21            **Claim That The Jury Should Have Been Instructed Regarding**
            **the Buffalo Logs**

22       Defendant repeats an argument he made at the close of trial,

23  that the jury should have been instructed that they could not render

24  a verdict based on the Buffalo external hard drive (Mot. at 11-12).

25  As the Court recognized at the close of the evidence, the record did

26  not actually establish that the external hard drive was non-

27  functional.  On cross-examination, Pixley testified that he saw a

28  note that it was non-operational, and SA Cady testified that it had

12

not been functional when it was plugged in but that he was able to view the contents of the hard drive after removing it from the enclosure.  That the enclosure was non-functional does not necessarily mean that defendant would not have had access to the materials on the hard drive; as the defense pointed out at trial, defendant was an engineer, and as Pixley testified, defendant reused hard drives from old computers in prior instances (Ex. 55).

If it were not functional, defendant certainly had not decided to discard it, and may well have anticipated that he himself would have been able to place the external hard drives in a different enclosure and use it.  As described above, the overwhelming evidence shows that defendant was the person who used, exercised control over, and accessed the contents of "OrigData," and he was also the person who backed up his own Internet favorites as well as his personal files in his "data" folder at the same time he backed up "OrigData," and thus in any event he knew what was on it and knowingly possessed in August 2014, months after he chose to put it in storage rather than discard it.

Finally, even if the Buffalo drive were non-functional, it still contained evidence of the successive back-ups that reflected user-activity by the defendant in renaming and re-organizing the contents of "OrigData," while also adding more adult pornography and at least one piece of personal correspondence (Ex. 42).  Defendant's argument that the jury should have been prevented from even considering any of the contents on the Buffalo hard drive is unsupported.  (Mot. at 11). The fact that very similar versions of "OrigData" and defendant's other personal files were found on both the Buffalo hard drive and on the Dell and Acer computers means that the evidence residing on the

13

1   Buffalo hard drive--showing what defendant chose to back up and the

2   changes he made to the files and folders he was backing up between

3   the specific times he backed-up his data--is strong evidence of

4   defendant's knowledge, regardless of whether he continued to use it.

5        Defendant cites United States v. Kuchinski, 469 F.3d 853, 863

6   (9th Cir. 2006), to argue that he must have had access to and

7   dominion and control over the child pornography videos at issue.

8   (Mot. at 11).  Kuchinski, however, involved "cached" files that are

9   automatically stored in a "'system protected' area" that the

10  operating system tries to prevent users from accessing, and there was

11  no evidence that defendant "even knew of the existence of the cache

12  files," which were the basis for a sentencing calculation.  Id. at

13  862.  Here, there was concrete evidence of defendant's knowledge of,

14  access to, and control over the child pornography videos in the many

15  places they were stored:  defendant downloaded files with explicit

16  child pornography names, stored them in folders according to their

17  contents, re-organized them according to their content, and renamed

18  some of the video files.  That is illustrated on the different

19  versions of "OrigData" contained on the Buffalo hard drive that

20  defendant used to back-up his data, which hard drive defendant did

21  not discard but rather kept in his possession and put into a storage

22  unit earlier in 2014.

23       For all of these reasons, it is therefore entirely proper for

24  the jury to consider as evidence the information stored on it.  That

25  the same materials appeared on that external hard drive as on more

26  recently operational computers suggests that one single user had

27  dominion and control over the materials in "OrigData" over the entire

28

time span from their first appearance to their last when they were found in defendant's possession in August 2014.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's Motion for Acquittal or for a New Trial.