Mark J. Werksman, Esq. (State Bar No. 120767)
WERKSMAN JACKSON HATHAWAY & QUINN LLP
888 West Sixth Street, Fourth Floor
Los Angeles, California  90017
Telephone: (213) 688-0460
Facsimile: (213) 624-1942

**Attorney for Defendant**
Keith Preston Gartenlaub

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>KEITH PRESTON GARTENLAUB,<br><br>　　　　　Defendant. | No. 14-CR-00173-CAS<br><br>**REPLY TO THE GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SET ASIDE THE VERDICT, OR, IN THE ALTERNATIVE, FOR NEW TRIAL** |

# TABLE OF CONTENTS

**PAGE(S)**

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A. THIS COURT SHOULD ENTER A JUDGMENT OF ACQUITTAL BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN MR. GARTNELAUB'S CONVICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        1. Legal Standard Regarding Motion for Judgment of Acquittal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        2. The Evidence Was Insufficient to Sustain a Conviction for Receipt of Child Pornography . . . . . . . . . . . . . . . . . . . . . . 6

        3. The Evidence Was Insufficient to Sustain a Conviction for *Attempted* Receipt of Child Pornography . . . . . . . . . . . . . . . 10

        4. The Evidence Was Insufficient To Sustain a Conviction for Possession of Child Pornography . . . . . . . . . . . . . . . . . . . . . 10

    B. THE INTERESTS OF JUSTICE REQUIRE THIS COURT TO GRANT MR. GARTENLAUB A NEW TRIAL . . . . . . . . . . . . . . . 12

        1. Legal Standard Regarding Motion for New Trial . . . . . . . . . 13

        2. The Jury Should Have Been Prevented from Considering Evidence that the Buffalo Drive Contained Child Pornography Because the Drive Was Non-Operational and Could Not Be Accessed . . . . . . . . . . . . . . . . . . . . . . . . . 13

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

PAGE(S)

**FEDERAL CASES**

*Ball v. United States*
 470 U.S. 856 .................................................. 9

*Estelle v. McGuire*
 502 U.S. 62 ................................................... 5

*Jackson v. Virginia*
 443 U.S. 307 .................................................. 5

*Newman v. Metrish*
 543 F.3d 793 .................................................. 6

*Rutledge v. United States*
 116 S.Ct 1241 ................................................. 9

*United States v. Alston*
 974. F.2d 1206 ............................................... 13

*United States v. Benoit*
 713 F.3d 1 .................................................. 8,9

*United States v. Cartwright*
 359 F.3d 281 .................................................. 6

*United States v. Schales*
 546 F.3d 965 ................................................ 8,9

**FEDERAL RULES AND STATUTES**

Fed. R. Crim. P. 29 ............................................. 5

Fed. R. Crim. P. 33 ............................................ 13

Mark J. Werksman, Esq. (State Bar No. 120767)
WERKSMAN JACKSON HATHAWAY & QUINN LLP
888 West Sixth Street, Fourth Floor
Los Angeles, California  90017
Telephone: (213) 688-0460
Facsimile: (213) 624-1942

**Attorneys for Defendant**
Keith Preston Gartenlaub

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>KEITH PRESTON GARTENLAUB,<br><br>　　　　Defendant. | No. 14-CR-00173-CAS<br><br>**REPLY TO THE GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SET ASIDE THE VERDICT, OR, IN THE ALTERNATIVE, FOR A NEW TRIAL** |

On December 21, 2015 Defendant Keith Preston Gartenlaub filed a Motion To Set Aside The Verdict, Or, In The Alternative, For A New Trial. (Doc. 172.) On December 28, 2015, the government filed an Opposition to Defendant's Motion To Set Aside Verdict, Or, In The Alternative, For A New Trial. (Doc. 173).

//
//
//
//
//

1

Defendant hereby files his Reply to the government's Opposition to his Motion To Set Aside The Verdict, Or, In The Alternative, For A New Trial

Dated: January 5, 2016                    Respectfully submitted,

                                          By: _____
                                          Inbal Zeevi
                                          Mark J. Werksman
                                          Attorney for Defendant
                                          Keith Gartenlaub

# I.
# INTRODUCTION

From the inception of this case the government has pursued the following tactic: inundating the trier of fact with complex technical information that is virtually impossible to follow, in order to create an impression that Mr. Gartenlaub is guilty, when in fact there is hardly any evidence that can support such a conclusion.[1] In its Opposition to Defendant's Motion to Set Aside Verdict or, In The Alternative, For A New Trial (herein "Opposition"), the government employs the same technique. By providing an incredible amount of technical irrelevant information[2], the government is trying to dodge the fact that at trial virtually no evidence was presented as to the receipt and attempted receipt of child pornography charges, and that the evidence presented in support of the possession

---

[1] This tactic was initially used by the affiant in applying for the search warrants of Mr. Gartenlaub's residence and storage units, and then at trial by having a computer expert, Mr. Pixley, testify for close to a day regarding information that was virtually impossible to follow for anyone that isn't a computer forensic expert.

[2] For example, the government expands on the "long period of time" that would have taken for movies to download via peer-to-peer software in 2002 and 2003, while in fact no evidence was presented that any of the files containing child pornography were downloaded via peer-to-peer software. (See Opposition, Doc. 173, p. 9 lines 18-27.) Rather, the only that peer-to-peer software was used by someone, on some unidentified computer, sometime in the past, was regarding the "partial" files. These "partial" files, however, as Mr. Pixley explained, failed to download. When Mr. Pixley discussed the length of time that it would take for a video to download back in 2002, he explained that his estimation applied to files that completed to download, not to files that failed to download. The partial files did not complete to download, they failed to download. Thus, they may have been created in as short as a few seconds. Therefore, the government's discussion of the long time that would take for a video to complete to download is irrelevant to the case at hand and does no more than unnecessarily complicate the discussion and confuse this Court.

3

charge was so weak such that no rational trier of fact could find beyond a reasonable doubt that Mr. Gartenlaub is guilty of any offense.

This trial came to be after the government intensively and pervasively investigated Mr. Gartenlaub for close to three years, searched his apartments, storage units, computers, electronic devices and email accounts, and had more than 16 months to examine the vast amounts of electronic data it retrieved.[3] This examination of electronic information enabled the government to travel in time, so to speak, and retrieve information about Mr. Gartenlaub and electronic devices dating back to as early as 1997. This included information regarding historical electronic devices that were in Mr. Gartenlaub's possession in the past and no longer exist.

Yet, at the conclusion of this extensive investigation, the government was essentially unable to find incriminating evidence that shows, beyond a reasonable doubt, that Mr. Gartenlaub knew that his computers contained child pornography or that he knowingly received such materials. Specifically, there was no evidence that Mr. Gartenlaub or anyone had ever opened or played any of the files that contained child pornography; there was no evidence to shed light on how those files ended up on his computer, who copied them there, from where and how; and there was, of course, no evidence that Mr. Gartenlaub had ever displayed any interest in child pornography.

At trial, the evidence showed that Mr. Gartenlaub's computer was located at a guest room in his apartment that was located by the beach. Multiple people had access to that apartment throughout the year: friends, family, co-workers, friends of family members and friends of friends would come to party, to stay near the

---

[3] The searches and seizures of Mr. Gartenlaub's electronic devices occurred on August 27, 2014: 16 months prior to trial. In addition, the government had had copies of all the devices since January 2014, when the "sneak and peak" searches occurred.

4

beach or to live in the apartment for weeks and even months. Indeed, many had keys to the apartment and would enter the apartment as they pleased. All had access to the computer which was not password protected at that time.

As discussed in Defendant's Motion to Set Aside Verdict or, In The Alternative, For A New Trial (hereinafter "Defendant's Motion") under these circumstances no rational trier of fact would have found Mr. Gartenlaub guilty of the charged offenses and this Court should set aside the guilty verdict.

In the alternative, as set forth in Defendant's Motion, this court should grant Mr. Gartenlaub a new trial in which the jury will be instructed that they must not consider child pornography that was stored on the Buffalo drive in reaching their verdict, because this drive was inoperable and the child pornography that was stored on it was inaccessible.

## II.
## ARGUMENT

### A. THIS COURT SHOULD ENTER A JUDGMENT OF ACQUITTAL BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN MR. GARTENLAUB'S CONVICTION

#### 1. Legal Standard Regarding Motion for Judgment of Acquittal.

As noted in Defendant's Motion To Set Aside Verdict, Or, In The Alternative, For A New Trial, the Due Process Clause requires that the prosecution prove every element charged in a criminal offense beyond a reasonable doubt. *Estelle v. McGuire*, 502 U.S. 62, 69 (1991). To ensure that a defendant is convicted in accordance with the principles of due process, Federal Rule of Criminal Procedure 29 provides that upon defendant's motion, the court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. Proc. 29. The relevant inquiry is whether, after viewing all of the evidence, "'any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt.'" *United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Although, as the government states, the evidence must be viewed in the light most favorable to the prosecution, "[m]ore than a 'mere modicum' of evidence is required to support a guilty verdict"; thus, a conviction should not be confirmed just because "some evidence" in the record supports the jury's finding of guilt. *Id.* at 1164 (quoting *Jackson, supra*, 443 U.S. at 320). Indeed, when "circumstantial evidence alone . . . support[s] a conviction, there are times that it amounts to only reasonable speculation and not to sufficient evidence." *Newman v. Metrish*, 543 F.3d 793, 796 (6th Cir. 2008); *United States v. Cartwright*, 359 F.3d 281, 291 (3d Cir. 2004) (evidence found insufficient where government asked the jury to make a series of inferences on weak facts where 'countless other scenarios that do not lead to the ultimate inference the government seeks to draw' were also plausible).

### 2. The Evidence Was Insufficient to Sustain a Conviction for Receipt of Child Pornography

In order for the defendant to be found guilty of Receipt of Child Pornography, it must be proven that: 1) he knowingly received a visual depiction of a minor engaged in sexually explicit conduct; 2) that the defendant knew the visual depiction was of a minor engaged in sexually explicit conduct; 3) that the defendant knew that production of the visual depiction involved the use of a minor in sexually explicit conduct; and 4) that the visual depiction had been mailed, shipped, or transported in interstate or foreign commerce by computer or other means. (Jury Instructions, Doc. 155, p.1.)

At trial, no evidence was presented as to the how, where, when or who originally downloaded the child pornography. Nor was there any evidence as to

who copied the files over from the "Unknown Source" to Mr. Gartenlaub's computer in February of 2005. (See Defendant's Motion to Set Aside Verdict or for a New Trial p. 5.) With virtually no information as to how or who received the files in question, no rational fact finder could find, beyond a reasonable doubt, that the elements of the receipt charge were met, much like the mere presence of drugs in a home would be insufficient to prove receipt of those drugs.

In their Opposition, the government seems to argue that the "Unknown Source," or what they now call the "Unknown Source*s*," were somehow tied to Mr. Gartenlaub. (See Opposition p. 10 lines 10-13.) However, no such evidence was presented at trial. Contrary to what the government is now arguing, the nature of the "Unknown Sources" remains unknown, and there was no evidence suggesting that they were hard drive rather than a compact disk or any other device. (See *id*.) Similarly, there was no evidence that showed that the "Unknown Sources" contained prior versions of OrigData.[4] (See *id*.) Rather, Exhibit 85 shows that only

---

[4] Exhibit 55, which was used by the government as a visual aid at trial, contains a mistaken entry that seems to indicate that a prior version of OrigData was transferred over to Mr. Gartenlaub's computer on February 5 and 7 of 2005. This, however, was not proven at trial. What was proven was only that on these dates files containing child pornography–*not* OrigData–were transported over to Mr. Gartenlaub's computer. The record regarding Exhibit 55 must be made clear: this exhibit was provided to the defense on Monday December 7, 2015, after the jury was selected and on the evening before opening statements were due. The defense complained about the untimely manner in which this exhibit, together with multiple other exhibits, were provided, explaining that the defense and its expert could not possibly examine the exhibits and their accuracy in the midst of trial. Accordingly, the court excluded all exhibits that were not originally attached to Mr. Pixley's report. Upon the government's request, and in reliance on the government's presentation to the defense that Exhibit 55 is merely a visual depiction of Mr. Pixley's report, the defense agreed that the government will be permitted to display Exhibit 55 to the jury. Later, however, it was revealed that Exhibit 55 was not a visual representation of Mr. Pixley's report, but that it contained new and inaccurate information. This information was not proven in trial and the government must not be allowed to rely on it their Opposition.

files containing child pornography –and not any version of OrigData– were transported over to Mr. Gartenlaub's computer during February 5 and February 7 of 2005.[5] Therefore, and contrary to the government's argument, the "Unknown Source" is indeed unknown, and most significantly, it was never tied to Mr. Gartenlaub in any way.

    Second, the government is arguing that the jury could have inferred that Mr. Gartenlaub was the person who downloaded the child pornography in the first place from the fact that the child pornography was later found in OrigData. (See Opposition, Doc. 173, p. 8, lines 5-13; see also *id.* p. 8 line 25 – p. 9. line 6.) This argument is tantamount to arguing that if the jury concluded that Mr. Gartenlaub was guilty of possession of child pornography, they should infer from this that he is also guilty of receipt. Obviously, this is not the correct legal standard. Receipt is not a lesser included of possession. Quite the opposite: possession is the lesser included offence. See *United States v. Benoit*, 713 F.3d 1, 13 (10th Cir. 2013); *United States v. Schales*, 546 F.3d 965, 978 (9th Cir.2008). Thus, receipt cannot be inferred from possession.

    In its Opposition, the government essentially concedes that it does not have, and did not present at trial, any evidence as to who downloaded the child pornography, how, where, from where and to what device. The government further acknowledges that the Morpheus program was *not* used to download the files in question. (See Opposition p. 10, lines 1-7.) In its attempt to overcome the lack of information as to how the alleged receipt occurred, the government is now offering a speculation: that "defendant appears to have used more than one peer-to-peer file sharing software" in order to "create his collection." (*Id.* p. 10 lines 5-6.) This, however, was not proved at trial, and the government did not provide any evidence suggesting that the files containing child pornography were downloaded by any

---

[5] See Exhibit 85, the first column on the left, under the "File Created" date.

peer-to-peer software.[6] Rather, the government's own expert, Mr. Pixley, discussed several possible ways that could lead to Mr. Gartenlaub's computer containing child pornography, including 1) downloading the files using sofware such as peer-to-peer software; 2) copying data from another computer; and 3) actual production. While it is clear that production is irrelevant here, it remains unknown whether the files were indeed downloaded (as the government is claiming) or simply copied from another device.

In sum, the government did not prove at trial how the files containing child pornography were downloaded, to what device, from where, or by whom. All they were able to prove is that such files existed on Mr. Gartenlaub computer. This lack of evidence cannot support a conviction for receipt of child pornography.

In addition, the court should set aside the conviction for Count One on the separate grounds that it is impossible to tell whether the jury convicted Mr. Gartenlaub for receipt of the files containing child pornography or for attempted receipt of the "partial" files. Indeed, it remains unknown whether all the jurors unanimously agreed as to why Mr. Gartenlaub was found guilty on Count One: for receiving the child pornography or for attempting to download the "partial" files.[7]

//
//

---

[6] The only evidence presented in connection with any use of peer-to-peer software was in connection with the "partial" files, none of which were found to contain child pornography.

[7] If this court does not set aside the verdict in its entirety, it will nevertheless eventually have to vacate one of the counts under *Ball v. United States*, 470 U.S. 856 (1985); see also *Rutledge v. United States*, 116 S.Ct 1241, 1248 (1996) [when the jury returns a guilty verdict for receipt and possession for the same conduct the court must vacate one of the underlying convictions]; *United States v. Benoit*, 713 F.3d 1, 12-19 (10th Cir. 2013) [same]; *United States v. Schales*, 546 F.3d 965, 978 (9th Cir.2008) [same].

### 3. The Evidence Was Insufficient to Sustain a Conviction for *Attempted* Receipt of Child Pornography

In his Motion To Set Aside the Verdict, Or, In The Alternative, For A New Trial, Mr. Gartenlaub explained that according to the government the attempted receipt occurred in 2004, before any of the files were initially copied over to his computer. (See Doc. 172, p. 6-8.) Mr. Gartenlaub further showed that there was affirmative evidence that proves that the "partial" files were *not* downloaded by any of the devices that were ever in his possession.

In its Opposition, the government argues that "[t]he partial files themselves satisfy the elements of attempt" because the words in them show that whoever tried to download them knew what he was doing. (Opposition p. 8 lines 19-25.) That could possibly be true if the computer that contained these files also contained software that could have created them. At trial, however, Mr. Pixley testified that none of the computers or devices that were ever in Mr. Gartenlaub's possession could have created the "partial" files. Therefore, it is clear that no rational fact finder could have found, beyond a reasonable doubt, Mr. Gartenlaub was responsible for creating the "partial" files and that he attempted to download child pornography.

### 4. The Evidence Was Insufficient To Sustain a Conviction for Possession of Child Pornography

In his Motion To Set Aside the Verdict, Or, In The Alternative, For A New Trial, Mr. Gartenlaub argues that no rational trier of fact could find beyond a reasonable doubt that he was guilty of knowingly possessing child pornography when the evidence was clear that he never opened or viewed any of these files. (See Defendant's Motion, Doc. 172, p. 8-10.)

In its Opposition, the government argues that information that "defendant accessed some of the folders of child pornography in 2012 and 2013" is sufficient

to show that he was aware of these folder's contents. (See Opposition p. 11 lines 16-21.) This is inaccurate. First, the evidence showed that only two folders were opened,[8] and only one of these two folders contained, inter alia, file names that indicate that they might contain child pornography.[9] Second, there is no evidence as to who opened that folder, how long it remained opened, whether other programs were running in the background or blocking the foreground concurrently, or whether the viewer had a chance to read through the fine print and realize that the folder might contain child pornography. Therefore, no rational fact finder could find beyond a reasonable doubt that Mr. Gartenlaub is guilty of possession based on the fact that a single folder was briefly opened once in a time period of 13 years, when the files it contained –or any other files containing child pornography– were never opened or viewed by any user at any time.

In his Motion To Set Aside the Verdict, Or, In The Alternative, For A New Trial, Mr. Gartenlaub pointed out that the government made a misleading statement in its summations, when it argued that Mr. Gartenlaub opened a folder containing child pornography and an hour later backed up that folder together with other folders. (See Doc. 172, p. 9 n. 5.) In its Opposition, the government decently concedes that this statement was indeed inaccurate, and that the specific folder that was opened was not backed up. (See Doc 173, p. 5, n. 2.) The government, however, argues that this is of no consequence because a different version of OrigData was backed up, and because "the prosecutor's rebuttal argument specifically pointed the jury to their own recollection of Pixley's testimony, not what either counsel argued." This last argument must be addressed. While the jury is generally able to rely on their recollection of the evidence when reaching a

---

[8] The "vi" folder and the "anp" folder.

[9] The "vi" folder does not contain names that relate to child pornography.

11

verdict, this was virtually impossible in the instant case. The complex forensic information in Pixely's testimony was presented to the jury in a manner that was virtually impossible to follow. It was readily apparent that many jurors were falling asleep during his testimony, while others were staring perplexed. Undoubtedly, the Court itself found Mr. Pixley's testimony extremely hard to follow. Because of this, the prosecution had an enhanced obligation during its summations to accurately present the facts that were proven, and to refrain from claiming that it proved things that were not actually proven during the trial.[10]

### B. THE INTERESTS OF JUSTICE REQUIRE THIS COURT TO GRANT MR. GARTENLAUB A NEW TRIAL

The interests of justice require that Mr. Gartenlaub be granted a new trial. As set forth in more detail below, Mr. Gartenlaub should be granted a new trial

---

[10] The prosecution's argument during summations that defendant opened a folder, saw that it contained child pornography, and then copied it over an hour later is only one example of the misleading statements it made. Other examples include the prosecution's statement, in reply to the defenses assertion that Mr. Gartenlaub never opened or played any of the files containing child pornography, that the reason there is no such evidence is because Mr. Gartenlaub made sure there could be no such evidence by using a "GOM Player" program that does not save the history of which files were viewed using it. This was misleading because Mr. Pixley also explained that such historical information is retained by other means as well. For example, Mr. Pixley explained that the files themselves retain information that specifies the last date in which they were opened (the "Last Accessed" date) and the last accessed date of the relevant files here indicates that they were indeed never opened. Therefore, it was incorrect to state that Mr. Gartenlaub made sure there could be no information as to when the files were opened and that this is why there is no such information. The opposite is true. There is information as to when the files were opened, this information was retained, and it indicates, as argued by the defense, that the files were never opened. In addition, Mr. Pixley did not support his opinion that the GOM player does not maintain history by any forensic evidence.

12

because 1) this Court should have excluded all evidence that the Buffalo drive contained child pornography because the drive was non-operational and could not be accessed; and 2) the jury should have been instructed that the government must prove that the defendant himself received the child pornography through interstate commerce.

### 1. Legal Standard Regarding Motion for New Trial.

A court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal." *United States v. Alston*, 974. F.2d 1206, 1211-12 (9th Cir. 1992). The district court need not review the evidence with deference towards the verdict; rather, the court may "weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *Id.* "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." *Id.* at 1211-12.

### 2. The Jury Should Have Been Prevented from Considering Evidence that the Buffalo Drive Contained Child Pornography Because the Drive Was Non-Operational and Could Not Be Accessed

As detailed in Defendant's Motion To Set Aside the Verdict, Or, In The Alternative, For A New Trial, the government's evidence showed that the Buffalo drive, which contained three copies of OrigData, was not operational. (See Defendant's Motion, Doc. 172, p. 11-12.) The defense further showed, citing

13

relevant case law, that the fact that the device was not operational means that Mr. Gartenlaub did not have the required dominion and control over the information stored in that device and the legal requirement for possession is therefore not met. (See *id*.) Therefore, the jury should have been instructed that they must not consider any child pornography found on the Buffalo drive in reaching their verdict.

      In its Opposition, the government essentially acknowledges that the Buffalo device was not operational. It does not, however, present any authority to why the jury should have been permitted to consider child pornography contained on such a device in reaching their verdict. The government's argument, that there were sufficient other copies of OrigData, does not justify the absence of such an instruction either. This is especially true since the government extensively used the total number of files containing child pornography throughout the trial as well as in its closing arguments. An appropriate timely ruling and instruction by the court would have cut these over inflated numbers by approximately half. Instead of 96 video that were found in 7 copies of OrigData, the relevant number would have been 96 files found in only 4 copies, adding up to a mere 384 files in all the digital devices together, rather than close to a thousand files as referenced by the government in its summations. Due to the lack of instruction, the impression the jury was under, when considering whether Mr. Gartenlaub knew his computers contained child pornography, was that the computers contained hundreds of child pornography videos that were not actually there because they were inaccessible.

//
//
//
//
//

## III.
## CONCLUSION

For the foregoing reasons, Mr. Gartenlaub respectfully requests this Court set aside the verdict, or, in the alternative, grant his motion for a new trial.

Dated: January 5, 2016

Respectfully submitted,

WERKSMAN JACKSON
HATHAWAY & QUINN LLP

By: _____
Inbal Zeevi
Mark J. Werksman
Attorney for Defendant
Keith P. Gartenlaub